# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DAVID W. FULFORD,**

                              **Plaintiff,**

**-vs-**                                          **Case No.  6:07-cv-1196-Orl-22KRS**

**NCO FINANCIAL SYSTEMS, INC., d/b/a**
**NCO-MEDCLEAR,**

                              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

         This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **APPLICATION OF SAXON, GILMORE, CARRAWAY, GIBBONS, LASH & WILCOX, P.A. FOR REASONABLE ATTORNEY'S FEES AND COSTS (Doc. No. 18)** |
| **FILED:** | **December 30, 2007** |

## I.    PROCEDURAL HISTORY.

         On July 23, 2007, Plaintiff David W. Fulford filed a four-count verified complaint against

Defendant NCO Financial Systems, Inc., d/b/a NCO-Medclear (NCO) alleging violations of the

Fair  Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Fair Credit Reporting

Act (FCRA), 15 U.S.C. § 1681, *et seq.*, the Florida Consumer Collection Practices Act (FCCPA),

Fla. Stat. § 559.55, *et seq.*, and Florida common law for slander of credit.  He sought an award of

statutory damages, actual damages arising from emotional distress, punitive damages and reasonable attorneys' fees and costs.  Doc. No. 1.

In his complaint, Fulford averred that in April 2007, he was contacted via telephone by an employee of West Asset Management, Inc. (West), demanding payment of a debt Fulford allegedly owed to NCO.  Doc. No. 1 ¶ 8.  It appeared to Fulford that NCO had acquired the alleged debt from the original creditor, Baydock Emergency Physicians, after the debt was in default.  *Id.* ¶ 9.

Fulford advised West that he disputed the alleged debt.  *Id.* ¶ 11.  He averred that national credit reporting agencies had previously deleted the debt from his credit file.  *Id.* ¶ 12; Doc. No. 1-2, Ex. C.  He also advised West that he believed the debt was the result of identity theft.  *Id.* ¶ 11.  He offered to provide West and NCO a copy of the police report he had made regarding identity theft and fraudulent use of his social security number.  *Id.*  A copy of the police report is attached to the complaint.  Doc. No. 1-2, Ex. A.  Nevertheless, NCO continued to attempt to collect the alleged debt.  *Id.* ¶ 14.

NCO asserts that Fulford first disputed the debt directly with NCO on about June 18, 2007.  Doc. No. 21 at 2.  On June 21, 2007, NCO deleted the debt internally and with the credit bureaus.  *Id.* at 2 & Ex. A.  Nevertheless, on July 23, 2007, Fulford filed the complaint in the present case.  Doc. No. 1.

NCO answered the complaint.  Doc. No. 6.  On August 17, 2007, it served Fulford with an offer of judgment pursuant to Federal Rule of Civil Procedure 68.  The offer of judgment provided in pertinent part as follows:

> 3)     Judgment shall be entered against NCO for damages in the
>        amount of One Thousand Five Hundred Dollars and No/100
>        ($1,500.00) for NCO's alleged violations of the Fair Debt

> Collection Practices Act (FDCPA), the Florida Consumer
> Collection Practices Act (FCCPA), and any other violations
> alleged in this lawsuit;
>
> 4)     The Judgment entered shall also include an amount
>        for reasonable costs and attorney's fees accrued
>        through the date of this Offer of Judgment.
>        Reasonable costs and attorney's fees are to be agreed
>        upon by the parties, or, if the parties are unable to
>        agree, to be determined by the Court on application
>        by plaintiff's counsel subject to the limitations that
>        attorney's fees and costs are cut off as of the date of
>        this Offer of Judgment; . . .

Doc. No. 11.  Fulford accepted the offer of judgment on August 21, 2007.  *Id.*

The parties subsequently notified the Court that they had been unable to resolve the amount of attorney's fees and costs to be paid.  Doc. No. 15.  Pursuant to my order, counsel for Fulford filed the present motion for assessment of the reasonable attorney's fees and costs.  Doc. No. 18. Counsel submitted with the motion time sheets describing the work performed.  Doc. No. 18-2 (Time Sheets).  NCO filed a response to the motion, supported by a number of exhibits.  Doc. No. 21.  It also filed an Affidavit Regarding Plaintiff's Attorney Fees and Costs prepared by Barbara Sinsley, Esq., an expert in fair debt and fair credit issues.  Doc. No. 21-7.

The motion has been referred to me for issuance of a Report and Recommendation.  It is now ripe for review.

## II.     APPLICABLE LAW.

Rule 68 provides that a plaintiff may accept an offer of judgment within ten days after being served, as occurred in this case.  An offer of judgment under Rule 68 "consists of two components: (i) the substantive relief proposed, which may be a sum of money . . . , and (ii) costs, including a reasonable attorney's fee.  The offer should specify the first component with

exactitude.  But the amount of the fee is within the discretion of the court if the offer is accepted."

*Delta Air Lines, Inc. v. August*, 450 U.S. 346, 365 (1981).   There is no dispute in this case that

Rule 68 costs include attorney's fees pursuant to the provisions of the offer of judgment.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the

most useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate."  This amount, which

is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."  *Id*. at

434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

In determining the lodestar, a reasonable hourly rate is based on the prevailing market rate

in the relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation.  *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1571 (11th

Cir. 1985).  Additional factors to be considered in determining a reasonable fee include: (1) the

time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to

perform the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6)

whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances;

(8) the amount involved and the results obtained; (9) the experience, reputation and ability of the

attorneys; (10) the undesirability of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases.  *Johnson v. Ga. Highway Express,*

*Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

"The applicant bears the burden of producing satisfactory evidence that the requested rate

is in line with prevailing market rates.  Satisfactory evidence at a minimum is more than the

affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to

-4-

rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman*, 836 F.2d at 1299 (internal citations omitted).  It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees.  *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

The "'fee applicant bears the burden of . . . documenting the appropriate hours and hourly rates.'"  *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).  "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.  If the party submits inadequate documentation, the district court may reduce the amount of the award.  *See id*.

**III.    ANALYSIS.**

   *A.    Attorneys' Fees.*

Fulford indicates that his attorneys and a paralegal at the Saxon, Gilmore, Carraway, Gibbons, Lash and Wilcox, P.A. law firm worked 46.60 hours litigating the case.  Time Sheets at 6.  He seeks an hourly rate of $115.00 for paralegal Kari Power, who had 18 years of experience when the complaint was filed and is a Certified Paralegal and Certified Florida Legal Assistant; $185.00 for Attorney Anthony Hayden, who had practiced law about 6 years when the complaint was filed; and, $250.00 for Attorney Damon M. Ellis, who had practiced law for about 10 years when the complaint was filed.  Based on these rates, Fulford seeks $10,330.00 in attorneys' fees. *Id.*

NCO submits that the attorneys' fees sought are "extraordinarily excessive." Doc. No. 21 at 3. It does not dispute the hourly rates sought, even though it recognizes that the hourly rates are "on the very high end for consumer law cases." Doc. No. 21 at 5. It argues that attorneys billing at a high hourly rate should need less time to perform work than that required by a less experienced attorney. *Id.* at 5. It relies on expert affiant Sinsley's opinion regarding a reasonable number of hours for the type of work performed.

Accordingly, I will analyze only the reasonable number of hours worked in light of NCO's stipulation to the hourly rates.

1.    <u>Reasonable Number of Hours</u>.

NCO makes three categories of objections to the hours worked. First, it contends that too much time was spent before the complaint was filed. Second, it contends that excessive time was devoted to certain tasks after the complaint was filed. Finally, it submits that Fulford is not entitled to any attorneys' fees for work performed after the date of the offer of judgment. I will address these objections in turn.

a.    **Hours Worked Before the Complaint Was Filed.**

The Time Sheets reflect that between April 23, 2007, and July 23, 2007, when the complaint in the present case was filed, Ellis worked 18.3 hours, Hayden worked 15.6 hours and Power worked 0.5 hours. "[I]t is settled that a prevailing party may recover fees for time spent before the formal commencement of litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests." *Webb v. Bd. of Educ.*, 471 U.S. 234, 250 (1985).

The question presented here is whether the time worked was reasonable in light of the experience of the lawyers who performed it.

NCO contends and Sinsley avers that Ellis and Hayden spent excessive time before filing the complaint in this case in light of their expertise in debt collection practices cases.  NCO cites six cases brought by Ellis and Hayden in 2007 alleging violations of debt collection statutes.  Of the six cases NCO cited, however, only one was filed before the present case began.  *See Lansdowne v. LTD Financial Servs., LP,* Case No. 3:07-cv-455-J-JHM-MCR, doc. no. 1 (M.D. Fla., May 25, 2007).   Both Ellis and Hayden were counsel of record in *Lansdowne*.  The complaint alleged violation of the FDCPA and FCCPA, but not of the FCRA or Florida common law slander of credit. Independent review of the CM/ECF system reveals that Ellis and Hayden filed an additional complaint alleging violation of the FDCPA in January 2007.  *Lorenzo v. Wagner & Hunt, P.A.*, Case No. 8:07-cv-146-T-JDW-TBM, doc. no. 1 (M.D. Fla., Jan. 23, 2007). Ellis also earlier defended a case involving allegations of violation of the FDCPA.   *Stern v. Superior Asset Mgm't, Inc.*, Case No. 0:05-cv-61454-PAS (S.D. Fla. Sep't 1, 2005).  Thus, while it appears that Ellis and Hayden had experience with FDCPA and FCCPA before the present complaint was filed, there is no showing that they were familiar with FCRA or Florida common law slander of credit.  Thus, except as discussed below, I do not find the time spent researching debt collection practices statutes to have been unreasonable.

Many of the entries in the Time Sheets record multiple activities in a single time entry. Attorneys should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437.  When they include multiple tasks in a single

time entry, often referred to as "block billing," it is difficult for the Court to determine the amount of time spent on particular tasks.

For example, some of Ellis' presuit work involved an analysis of what causes of action could be asserted against West. *See* Time Sheets 04/24/2007 2.0 hrs DME; 04/30/2007 1.5 hrs DME; 05/01/2007 1.0 hrs DME; 05/21/2007 0.4 hrs DME; 05/24/2007 0.5 hrs DME; 06/25/2007 1.2 hrs DME. West was not named as a defendant in this case, and Fulford has not established that all of the time expended was equally applicable to NCO. Accordingly, I recommend that the Court deduct 3.5 hours, approximately one-half of the time recorded, from Ellis' time for work not attributable to preparation for filing the complaint against NCO.

Some of Hayden's presuit work also involved research regarding West. In addition, Hayden performed internet research to obtain mailing addresses for West and NCO and to obtain corporate information about these companies. This internet research could have been performed by a paralegal at a lower hourly rate. *See* Time Sheets 05/30/2007 1.5 hrs AAH; 05/31/2007 1.5 hrs AAH; 06/05/2007 1.8 hrs AAH; 06/13/2007 1.5 hrs AAH. Accordingly, I recommend that the Court deduct 3 hours from Hayden's time for work not attributable to preparation for filing a complaint against NCO, and award the remaining 3.3 hours at the rate of $115.00 per hour, which is the stipulated hourly rate for a paralegal in this case.

NCO contends that Ellis and Hayden also spent an extensive amount of time drafting the complaint and preparing the summons. In total, Ellis spent about 2 hours and Hayden spent about 3 hours drafting and revising the complaint. *See* Time Sheets 05/31/2007 0.9 hrs DME; 06/08/2007 1.5 hrs AAH; 06/11/2007 1.0 hrs AAH; 06/12/2007 0.8 hrs DME; 06/12/2007 0.6 hrs AAH; 07/10/2007 0.4 hrs DME; 07/23/2007 1.0 hrs DME. This is a reasonable amount of time to

draft a four-count complaint.  However, Power recorded 0.5 hours to "[r]eview summons; direct assistant regarding proper summons form; coordinate filing of complaint and issuance of summons with process server's office."  Time Sheet at 4.  While some time is appropriately compensated for ensuring that the summons was in proper form, revising the summons and coordinating service are clerical tasks that are not compensable.  *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Accordingly, I recommend that Power's time be reduced by 0.3 hours.

Finally, NCO objects to the amount of time Ellis and Hayden spent on intake and client communication.  Review of the time entries reveals that much of the communications were to develop and verify facts or advise Fulford of the results of research and drafting.  *See* Time Sheets 04/23/2007 1.9 hrs DME; 05/21/2007 0.4 hrs DME; 05/23/2007 0.8 hrs DME; 05/24/07 0.5 hrs DME; 06/18/2007 0.7 hrs DME; 06/25/2007 1.2 hrs DME; 07/02/2007 0.3 hrs DME; 07/10/2007 0.4 hrs DME.  The time for this work is reasonable.

Fulford has not established that the portion of 0.2 hours that Hayden spent on June 18, 2007 reviewing correspondence from Fulford was necessary and not duplicative of Ellis' work on the same day.  Because 0.1 hour of this time has already been deducted, I recommend that the remaining 0.1 hour also be deducted from Hayden's time.

Similarly, Fulford has not established the necessity for Ellis to work 0.5 hours on July 16, 2007, corresponding about the complaint that had previously been sent to Fulford for his signature. I recommend that 0.5 hours be deducted from Ellis' time for this work.

In sum, I recommend that 4.0 hours be deducted from Ellis' time, 3.1 hours be deducted from Hayden's time, 0.3 hours be deducted from Power's time, and 3.3 hours of Hayden's time be compensated at the rate of $115.00 per hour.

### b.      Hours Worked After the Complaint was Filed.

NCO objects to a number of entries made in the Time Sheets after the complaint was filed as excessive.  NCO's first objection is to Ellis' 7/25/2007 entry, in which Ellis recorded 0.4 hours to "receive, review and analyze orders from court regarding interested person disclosure, track designation and reassignment of case."  Time Sheets at 4.  These are standard orders entered in every case and do not support the amount of time billed by Ellis for their review.  I recommend that this time be reduced by 0.2 hours.

The next entry to which NCO objects is Ellis' 7/31/2007 entry, in which Ellis recorded 0.6 hours for "correspondence with Ken Grace [NCO's counsel] regarding settlement; review and analyze issues relating to same."  *Id.*  NCO notes that the correspondence was a voicemail message, and the response was a two-sentence e-mail reply in which Ellis indicated that he had not yet conferred with Fulford regarding the request for a settlement demand.  Doc. No. 21 at 8; Doc. No. 21-5 at 2.  In light of Ellis' response to Grace, a reasonable amount of time for this work is 0.2 hours.  Therefore, I recommend that Ellis' time be reduced by 0.4 hours.

NCO next objects to Hayden's 8/01/2007 time entry as excessive.  In that entry, Hayden recorded 1.0 hour to "draft, review and revise initial settlement offer."  Time Sheets at 4.  NCO contends that the offer was a letter drafted by Lauren Stricker, legal secretary.  Doc. No. 21 at 8.  However, the exhibits to the response reflect that Stricker merely drafted a cover letter enclosing a three-page settlement offer over Ellis' signature.  The Time Sheets reflect that both Hayden and Ellis worked on the settlement offer.  *See* Time Sheets 08/01/2007 1.0 hrs AAH; 08/01/2007 0.7 hours DME.  Accordingly, NCO's objection to this time entry is not well taken.

NCO objects to Ellis' 8/2/2007 entry, in which Ellis recorded 1.10 hours to "receive, review and analyze correspondence from Ken Grace relating to settlement; draft; review and revise reply to same." Time Sheets at 4-5. NCO filed the correspondence from NCO's counsel in which Grace made a counter-offer and referred to a possible defense that NCO might assert. Doc. No. 21-5 at 7-8. It was reasonable for Ellis to spend little more than an hour reviewing and analyzing the response, including the legal defense raised by Grace.

The next objection is to Ellis' 8/6/2007 entry, in which Ellis billed 1.0 hour to "revise and send second settlement letter; multiple correspondence with client and opposing counsel regarding deletion and related matters." Time Sheets at 5. NCO objects that the time spent by Ellis was excessive because the second settlement letter was nearly identical to the first letter. Review of the response, doc. no. 21-5 at 10-11, supports the time spent preparing it, including discussion with Fulford about the matters discussed therein. Therefore, NCO's objection to this time is not well taken.

The next objection is to Ellis' entry dated 8/08/2007, in which Ellis bills 0.5 hours for "multiple correspondence with opposing counsel regarding settlement and related extension and preliminary case management issues." Time Sheets at 5. NCO has filed a copy of the relatively brief e-mails between Ellis and Grace. Doc. No. 21-5 at 14-16. Based on these e-mails, the time sought by Ellis is excessive. I recommend that Ellis' time be reduced by 0.2 hours.

NCO objects to Ellis' 8/15/2007 entry, in which Ellis recorded 1.0 hours to "conference via telephone with opposing counsel; draft, review and revise correspondence to opposing counsel regarding . . . settlement issues; review and analyze related issues." Time Sheets at 5. NCO argues that the telephone conference that took place in this entry lasted no more than 24 minutes.

-11-

It also filed a copy of the correspondence referenced in the entry.  Doc. No. 21-5 at 20-21.  After review of the correspondence, and in light of the length of the telephone conference, I find the time worked to have been reasonable.

NCO's next objection is to Ellis' 8/17/2007 entry, in which Ellis recorded a total of 2.1 hours to "receive, review and analyze answer and affirmative defenses from NCO and legal research regarding same (1.5); receive[,] review and analyze offer of judgment and research regarding same (0.6)."  Time Sheets at 5. I find that 2.1 hours is a reasonable amount of time to evaluate an offer of judgment in light of the answer and affirmative defenses.

Lastly, NCO objects to all time worked after August 17, 2007, the date of the offer of judgment.  The offer of judgment states that "[t]he judgment entered shall . . . include an amount for reasonable costs and attorney's fees accrued through the date of this Offer of Judgment. . . . [A]ttorney's fees and costs are cut off as of the date of this Offer of Judgment."  Doc. No. 11 at 3. Having accepted the offer of judgment, Fulford is bound by its terms.  Accordingly, 2.0 hours worked by Ellis after August 17, 2007 is not compensable.  *See* Time Sheets 08/20/2007 0.5 hrs DME; 08/21/2007 0.6 hrs DME; 08/24/2007 0.6 hrs DME; 9/12/2007 0.3 hrs DME.

In sum, Ellis' time will be reduced by 2.8  hours for the work performed after the filing of the complaint.

2.    Lodestar.

Based on the foregoing analysis, I conclude that the lodestar attorneys' fee in this case is as follows:

| PROFESSIONAL | HOURLY RATE | COMPENSABLE HOURS WORKED | TOTAL |
|---|---|---|---|
| Damon M. Ellis | $250.00 | 21.1 | $5,275.00 |
| Anthony A. Hayden | $185.00 | 11.3 | $2,090.50 |
| Anthony A. Hayden | $115.00 | 3.3 | $379.50 |
| Kari Power | $115.00 | 0.4 | $46.00 |
| **GRAND TOTAL** | | | $7,791.00 |

3.    Adjustment to the Lodestar.

The court may make a downward adjustment to the lodestar based on the results obtained. *Hensley*, 461 U.S. at 434.  There is not any precise rule or formula for making these determinations; it is left to the court's sound discretion.  *Id*. at 436-37.  The Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."  *Riverside v. Rivera*, 477 U.S. 561, 574 (1986).

NCO argues that the lodestar attorneys' fee in this case should be reduced because it is disproportionate to the recovery by the plaintiff, it is excessive as the case was resolved before discovery began, and the lawsuit could have been avoided entirely, as NCO had removed its entry from Fulford's credit reports a month before the complaint was filed.  *See* Doc. No. 21-2 Ex A; Doc. No. 21-5 at 12 (e-mail from Ellis to Grace confirming July 21, 2007 deletion). Sinsley's affidavit supports this argument.  NCO also cited a number of cases in which courts significantly

-13-

reduced attorneys' fee awards when cases were resolved early in the litigation.  *See* Doc. No. 21 at 14-17.

As part of the presuit review, Fulford and his counsel should have confirmed that the debt at issue still appeared on his credit report.  The Time Sheets reflect discussions regarding an updated credit report on July 2, 2007, but there is no information establishing that the debt continued to be reflected on the credit report at that time.  Indeed, the most recent credit report attached to the complaint was dated May 24, 2007.  Doc. No. 1-2 at 8.

Moreover, the Time Sheets indicate that counsel contacted West directly, but they do not show contact with NCO, which would have been prudent in an attempt to determine the status of the matter.  Had counsel contacted NCO, they likely would have learned well before the complaint was filed that NCO had requested that the debt be deleted.  If some part of the 34.4 hours litigating this case before the complaint was filed had instead been devoted to settlement efforts with NCO, it is likely that the case would have been resolved much sooner with far less attorney involvement.

Finally, in the complaint, Fulford sought actual damages arising from emotional distress and punitive damages, in addition to statutory damages and attorneys' fees and costs.  While Fulford did not state the amount of damages he sought, it is fair to assume that it was in excess of the statutory damages.  Statutory damages under the FDCPA are a maximum of $1,000.00, 15 U.S.C. § 1692k(a)(2)(A), and between $100.00 and $1,000.00 under the FCRA, 15 U.S.C. § 1681n(a)(1)(A).  Accordingly, the relief Fulford obtained under the offer of judgment, $1,500.00, is less than the amount he originally sought.  "[T]he relief a plaintiff requested is indeed relevant to determining the extent of that plaintiff's success."  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir. 1987)

Accordingly, I recommended that the lodestar attorneys' fee be reduced by 50%, resulting in an attorneys' fee of $3,895.50. This is slightly higher but nevertheless in line with the conclusion regarding the reasonable attorneys' fees reached by Sinsley. It is also commensurate with the limited results obtained for Fulford.

       5.    <u>Costs.</u>

Fulford seeks costs in the amount of $735.97 for reimbursement for the filing fee ($350.00), legal research fees ($261.17), delivery charges ($27.60), process server fees ($45.00) and copy charges ($52.20). Doc. No. 18-2. The offer of judgment permitted recovery of costs accrued as of the date of the offer of judgment. Costs are generally understood to be limited to the items enumerated under 28 U.S.C. § 1920. *See also Casden v. JBC Legal Group, P.C.*, No. 04-60669-Civ-MARRA, 04-60669-Civ-SELTZER, 2005 WL 165383, at *4 (S.D. Fla. Jan. 7, 2005).

Recovery of the filing fee and costs of service are permitted under § 1920. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). Accordingly, Fulford is entitled to be reimbursed for the $350.00 filing fee and $45.00 for service of process..

The costs for research and express delivery are not recoverable under § 1920. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002).

Under § 1920, "[a] prevailing party may recover photocopy costs for copies that the 'party could have reasonably believed' were necessary to the litigation." *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000)(citing *W&O, Inc.*, 213 F.3d at 623). "To recover for photocopy expenses, a prevailing party must product adequate documentation to show that the copies at issue were reasonably intended for use in the case." *Id.*; *accord Cullens v. Ga. Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)(disallowing copying costs because the

plaintiff failed to provide evidence of the documents' use or intended use).  Convenience copies for a client are not reimbursable.  *Cf. Maris Distrib. Co. v. Anheuser-Busch, Inc.*, Case No. 5:97-cv-15-OC-10GRJ, 2001 WL 862642, at *5-6 (M.D. Fla., May 4, 2001)(noting that practicality or convenience is not sufficient to meet the standard required to establish that copies were necessarily obtained). Fulford's counsel provided no explanation of the reason the reported copy charges were incurred, and no showing of when the copy costs were incurred.  Therefore, I recommend that no costs be awarded for photocopies.

Accordingly, Fulford is entitled to recover $395.00 in costs.

## III.    RECOMMENDATION.

For the foregoing reasons, I recommend that the Court **GRANT in part and DENY in part** the Application of Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. for Reasonable Attorney's Fees and Costs, doc. no. 18.  I further recommend that the Court order Defendant NCO Financial Systems, Inc. to pay Fulford $3,895.50  in attorneys' fees and $395.00 in costs.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 17, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy